# THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| KRISTIN WOOLLEY TORMEY, Personal Representative of the Estate of Thomas Dana Tormey, Jr., | ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | NO. CIV-12-1328-D |
| MORNING DOVE, LLC, an Oklahoma limited liability company; and BRIDGEWATER OFFICE PARK, LLC, an Oklahoma limited liability company, | ) ) ) ) ) | |
| Defendants. | ) | |

## ORDER

Before the Court is Defendants' motion [Doc. No. 12] to dismiss this action for lack of subject matter jurisdiction or, in the alternative, to compel arbitration. Plaintiff timely responded to the motion, and Defendants filed a reply.

Background:

Plaintiff brought this action as personal representative of the estate of  Thomas Dana Tormey, Jr. ("Mr. Tormey"), asserting claims arising from an agreement governing the operation of Defendant Bridgewater Office Park, LLC ("Bridgewater"), a limited liability company of which Mr. Tormey was a member.  Defendant Morning Dove, LLC ("Morning Dove"), a limited liability company, is the other member of Bridgewater.  Plaintiff alleges the defendants breached the terms of the operating agreement as well as their fiduciary duties arising from that agreement.  She seeks both damages and an accounting.   Invoking subject matter jurisdiction pursuant to 28 U. S. C. § 1332,  Plaintiff alleges the parties are citizens of different states,  and the amount in controversy exceeds $75,000, exclusive of interest and costs.

According to Plaintiff, Mr. Tormey was a citizen of Utah and, as the personal representative of his estate, she is also deemed to be a Utah citizen.  She asserts that Defendants Bridgewater and Morning Dove are citizens of Oklahoma for jurisdictional purposes.  The parties agree that Morning Dove and Mr. Tormey were the only members of Bridgewater, and Morning Dove was the manager of Bridgewater.

Discussion:

a. Subject matter jurisdiction:

In their motion, Defendants first seek dismissal for lack of subject matter jurisdiction, arguing that complete diversity of citizenship does not exist between the parties because a limited liability company is a citizen of all states in which its members are citizens.  As a result, Mr. Tormey's membership in Bridgewater renders it a citizen of both Utah and Oklahoma.  Because Plaintiff is also a Utah citizen, complete diversity of citizenship is absent, and the Court lacks subject matter jurisdiction.

In response, Plaintiff agrees that, for diversity jurisdiction purposes, Bridgewater was a citizen of both Oklahoma and Utah while Mr. Tormey was a member of Bridgewater. However, she argues that, pursuant to the express terms of the Bridgewater operating agreement,  Mr. Tormey's status as a member of Bridgewater terminated at his death, and his estate became a creditor of Bridgewater.  She contends that, although diversity jurisdiction could not have existed among these parties during Mr. Tormey's lifetime, he was not a member after his death.  Because this lawsuit was not filed until after his death, complete diversity of citizenship existed when the lawsuit was filed.

In their reply, Defendants concede that, after his death, Mr. Tormey was no longer a member of Bridgewater.  As a result, they now appear to agree that diversity of citizenship existed when this

lawsuit was filed.[1]

Notwithstanding the parties' apparent agreement that diversity jurisdiction may be exercised, the Court "has an independent obligation to ensure that it has subject matter jurisdiction." *Jefferson County School District R-1 v. Elizabeth E.,* 488 F. App'x 330, 331 (10th Cir. 2013) (unpublished opinion) (citing *Devon Energy Prod. Co. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1208 n. 10 (10th Cir. 2012)). Thus, "no action of the parties can confer subject-matter jurisdiction." *Dine Citizens Against Ruining Our Environment v. Klein,* 439 F. App'x 679, 683 (10th Cir. 2011)(unpublished opinion). Accordingly, the Court must determine whether the parties are correct that, at the time this lawsuit was filed, diversity of citizenship existed.

The parties agree that, according to the general rule followed by the majority of federal courts, a limited liability company is deemed a citizen of each state of which its members are citizens. As this Court has previously stated, "the question of how to determine the citizenship of a limited liability company remains undecided in this circuit," but all circuits addressing the issue have held that limited liability companies are citizens of each state in which their members are citizens. *Great White Pressure Control, LLC v. Seaboard International, Inc.*, 2009 WL 3763815, at *2 (W.D. Okla. Nov. 9, 2009) (unpublished opinion). More recently, the Northern District of Oklahoma also observed that the Tenth Circuit has not yet addressed the question, but "other circuit courts have held that the citizenship of a limited liability company is the citizenship of its members." *Tulsa Specialty Hosp., LLC v. Boilermakers National Health and Welfare Fund,* 2012 WL 2887513,

---

[1]Defendants' reply states that they challenged subject matter jurisdiction because they interpreted the allegations in the Complaint as asserting the claims of a *member* of Bridgewater rather than the claims of a *creditor*. Defendants are apparently now satisfied that Plaintiff pursues the claims as a creditor, which Defendants agree was Mr. Tormey's status after his death. However, Defendants ask the Court to direct Plaintiff to file an amended complaint to clarify that all claims are those of a creditor. Plaintiff has not objected to that request.

3

at *4 (N.D. Okla. July 13, 2012) (unpublished opinion).  In fact, "[a]ll federal appellate courts that have addressed the issue have reached the same conclusion: like limited partnerships and other unincorporated associations or entities, the citizenship of a LLC is determined by the citizenship of all of its members."  *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008) (citations omitted).

The existence of diversity jurisdiction is determined at the time the lawsuit is filed.  *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 570-71 (2004); *Symes v. Harris,* 472 F.3d 754, 758 (10th Cir. 2006).  The "time-of-filing rule...measures all challenges to subject-matter jurisdiction premised upon diversity of citizenship against the state of facts that existed at the time of filing-- whether the challenge be brought shortly after filing, after the trial, or even for the first time on appeal."  *Grupo Dataflux*, 541 U.S. at 570-71.

A review of the Bridgewater operating agreement, submitted as Exhibit A to the Complaint, reflects that the parties' interpretation is correct. The operating agreement addresses the impact of a death of one of its members, and defines the death of a member as an "event of dissociation." Operating agreement, Section 10.05.   The agreement also prescribes a procedure whereby the remaining members may elect to purchase the deceased member's units within 30 days of notice of the member's death by negotiating with his legal representative.  *Id.*   If an agreement cannot be reached, then the remaining members have an option, to be exercised within 60 days after the event of dissociation, to purchase the deceased member's interest.   The operating agreement further provides that "[f]rom and after the Event of Dissociation, the Dissociated Member shall be considered a creditor of the Company...and all other statutory or contractual rights associated with the former Member's interest shall cease."   Operating agreement, Section 10.05, p. 15.

4

The record reflects that Mr. Tormey died on December 24, 2011, and it is not disputed that Morning Dove was notified of his death on December 26, 2011.   Defendants do not dispute that there was no purchase of his interest in Bridgewater under Section 10.05 of the operating agreement.

Thus, under the clear terms of the operating agreement, Mr. Tormey was no longer a member of Bridgewater following his death, and his estate holds the status of a creditor of Bridgewater.  The only remaining member of Bridgewater is Morning Dove, and Morning Dove is a citizen of Oklahoma for diversity purposes.  As Mr. Tormey's personal representative, Plaintiff is deemed to be a citizen of Utah.   Because Mr. Tormey was no longer a member of Bridgewater at the time this lawsuit was filed, his Utah citizenship would not be attributed to Bridgewater, and diversity of citizenship existed when this lawsuit was filed on November 29, 2012.

Having fully reviewed the parties' respective briefs, the Court concludes that Defendants' motion to dismiss for lack of subject matter jurisdiction must be denied because, at the time this action was filed, complete diversity of citizenship existed.

b. Arbitration:

Having determined that subject matter jurisdiction may be exercised, the Court considers Defendants' alternative request that the parties be compelled to pursue arbitration as set forth in the Bridgewater operating agreement.   Plaintiff objects to the request on the grounds that, prior to the filing of this lawsuit,  Defendants refused to participate in arbitration, and in fact took the position that the arbitration clause does not apply because the estate is not a member of the limited liability company. Plaintiff argues that Defendants' conduct constitutes a repudiation or waiver of their right to compel arbitration.

"Whether the contracting parties 'are bound by a given arbitration clause raises a question

5

of arbitrability for a court to decide.'" *LodgeWorks, L.P. v. C.F. Jordan Construction, LLC*, 2012 WL 6621679, at* 2 (10th Cir. Dec. 20, 2012) (unpublished opinion) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)). "[U]nless the parties to an agreement 'clearly and unmistakably' provide otherwise, 'the question of arbitrability—whether a contract creates a duty for the parties to arbitrate the particular grievance—is undeniably an issue for judicial determination.'" *Newmont U.S.A., Ltd. v. Insurance Co. of North America*, 615 F.3d 1268, 1274 (10th Cir. 2010) (quoting *Riley Manufacturing Co., Inc. v. Anchor Glass Container Corp.*, 157 F.3d 775, 779 (10th Cir. 1998)).

Typically, to determine if a dispute is subject to arbitration, the Court must "initially determine whether the arbitration provision is broad or narrow." *Newmont*, 615 F.3d at 1274. "Where the arbitration clause is broad, there arises a presumption of arbitrability." *Id.* (citing *Cummings v. FedEx Ground Package Sys., Inc.*, 404 F.3d 1258, 1261 (10th Cir. 2005). In this case, however, Plaintiff does not dispute that the arbitration provision in the operating agreement is sufficiently broad to cover the claims asserted. Instead, her objection is based on her contention that Defendants repudiated or waived arbitration.

The arbitration clause in the Bridgewater operating agreement is included in a provision which prescribes the manner in which the parties are to resolve disputes or claims arising under the agreement. Operating Agreement, Exhibit A to Complaint, Section 14.03. According to that provision, if the parties are unable to resolve a dispute by negotiation, they will submit the dispute to mediation upon a written request for mediation by either party. *Id.* at Section 14.03(a). If the dispute cannot be resolved by mediation, the parties agree to submit their dispute to arbitration. The operating agreement provides that, if mediation is unsuccessful, "the parties shall resolve the

Dispute by arbitration pursuant to this section, under the then current rules and supervision of the American Arbitration Association." Section 14.03(b)(i). The agreement provides that arbitration shall take place in Oklahoma City, before a single arbitrator who is knowledgeable about the laws relating to business entities. *Id.* The agreement then sets out the procedures to be followed, the authority conferred upon the arbitrator, and the law to be applied by the arbitrator. Section 14.03(b)(ii).

Even if Mr. Tormey's rights as a member of Bridgewater were altered by his death and his subsequent classification as a creditor rather than a member, the general rule is that rights to arbitration survive, even if the contract is terminated or otherwise ceases to exist. "[A]n arbitration clause in a contract is presumed to survive the expiration of that contract. This presumption might be overridden given some express or clearly implied evidence that the parties intended to override that presumption, or the relevant dispute cannot be said to have arisen under the previous contract." *Newmont*, 615 F.3d at 1275 (citing *Riley Manufacturing,* 157 F.3d at 781). "A dispute 'arises under' a previous contract if it involves rights that to some degree vested or accrued during the life of the contract and merely ripened after expiration, or relates to events that occurred at least in part while the contract was still in effect." *Id.* Under Oklahoma law,[2] the right to proceed pursuant to an arbitration provision is also deemed to survive the expiration of the contract. "'The rule we follow is that 'where the dispute is over a provision of the expired agreement, the presumptions favoring arbitrability must be negated expressly or by clear implication.'" *City College, Inc. v. Moore Sorrento, LLC,* 246 P.3d 726, 732 (Okla. Civ. App. 2010) (quoting *Towe, Hester & Erwin, Inc. v. Kansas City Fire & Marine Ins. Co.*, 947 P.2d 594, 599 (Okla. Civ. App. 1997)).

---

[2] The operating agreement provides that it shall be governed by Oklahoma law. Operating Agreement, Section 14.11. The parties do not dispute the validity of this provision.


In this case, the parties do not suggest that the operating agreement terminated upon Mr. Tormey's death, and they acknowledge that his claims survive and are now asserted by his estate in its capacity as a creditor.  The Complaint alleges that the claims are based on disputes which occurred during Mr. Tormey's lifetime and are asserted as arising under the operating agreement while he was a member of Bridgewater.  More specifically, the claims are based on Morning Dove's alleged improper conduct in connection with capital contributions which it was required to make as a member of Bridgewater, and its alleged failure to make proper distributions to Mr. Tormey as a Bridgewater member.  *See* Complaint at ¶¶ 15-22; 23-24.  The Complaint also alleges that, prior to his death, Mr. Tormey notified Morning Dove regarding the assertion of these claims. *Id.* at ¶ 25.

The Complaint thus reflects that the claims Plaintiff asserts arise from the terms of the Bridgewater operating agreement. Accordingly, the arbitration clause providing for a means of resolving those disputes survived, and the arbitration clause is enforceable.[3]

Plaintiff argues, however, that Defendants should not be allowed to seek arbitration at this time because they previously repudiated arbitration.  Plaintiff alleges in the Complaint that, prior to filing this lawsuit, she requested mediation pursuant to the operating agreement.  Complaint at ¶ 36. Defendants' attorney at the time responded that, because Mr. Tormey was no longer a member of Bridgewater, the mediation and arbitration provisions of the operating agreement did not apply. *See* May 18, 2012 letter to Plaintiff's counsel,  Exhibit A to response brief.  According to Plaintiff's counsel, he later conferred with Defendants' current counsel, who again expressed Defendants' view

---

[3]Although Defendants initially took the position that the arbitration clause does not apply to creditors of Bridgewater, they have apparently abandoned that position, and it is obviously contrary to their current request to compel arbitration.  Plaintiff and Defendants offer no argument that the operating agreement's terms negate the arbitrability of these claims.

that the arbitration provision did not apply.   Declaration of Plaintiff's counsel, Exhibit B to Plaintiff's response, at ¶¶ 4-5.   However, Defendants' current counsel suggested Defendants might participate in an arbitration proceeding if it was not conducted by the American Arbitration Association, and Plaintiff's counsel agreed to convey that suggestion to Plaintiff. *Id.* He asked Defendants' counsel to submit names of proposed arbitrators, and  Defendants' counsel agreed to do so within two weeks. *Id.* at ¶ 6. When Defendants did not respond within four months, Plaintiff filed this lawsuit. *Id.* at ¶¶ 7, 8.

Plaintiff contends that Defendants' conduct constitutes a repudiation of the arbitration provisions of the operating agreement.  Relying on *Brown v. Dillard's, Inc.*, 430 F.3d 1004 (9th Cir. 2005) and *Garcia v. Eidal International Corp.*, 808 F.2d 717 (10th Cir. 1986), Plaintiff argues that, where a party breaches an agreement to arbitrate, its conduct constitutes a repudiation, and that party cannot subsequently seek to compel arbitration.

In *Brown,* a terminated employee filed a notice of intent to arbitrate her contractual wrongful termination claim against her former employer.  She did so pursuant to the employer's requirement that all employees agree to arbitrate any employment-related claims. The plaintiff filed a proceeding and paid her share of the arbitration fee to the American Arbitration Association, but the employer did not respond to the Association's requests for information, nor did it pay its portion of the filing fee.  The plaintiff attempted to communicate with the employer regarding arbitration, but the employer did not respond.  Ultimately, it notified her in writing that her "complaint had no merit," and it "refused to arbitrate." *Brown*, 430 F.3d at 1009.  The employee then filed a state court lawsuit and, after removing the case to federal court, the employer moved to compel arbitration.

On appeal of the district court's denial of that motion, the Ninth Circuit affirmed, holding

that "when an employer enters into an arbitration agreement with its employees, it must itself participate in properly initiated arbitration proceedings or forego its right to compel arbitration." *Brown,* 430 F.3d at 1006.   The Ninth Circuit found the employer's conduct constituted a breach of its obligations under the arbitration agreement, and "deprive[d] it of the right to enforce that agreement." *Id.* at 1010.   The Circuit based its holding on the contract law principle that "[h]e who seeks to enforce a contract must show that he has complied with the conditions and agreements of the contract on his part to be performed." *Id.* (quotations omitted).

As Defendants point out, however, the Ninth Circuit subsequently held *Brown* did not apply where the party claiming repudiation of an arbitration agreement had not formally initiated an arbitration proceeding.   *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1124 (9th Cir. 2008).   In *Cox*, the plaintiff was a disciplined employee whose employment agreement contained an arbitration provision.   He wrote to the employer, disagreeing with the disciplinary action, and the letter included a "request to enter into arbitration." *Id.* at 1118.   In response, the employer expressed its view that his dispute was not a "case for arbitration." *Id.*   The plaintiff in *Cox* did not initiate arbitration proceedings, but filed a lawsuit after his employment was terminated.   When the defendant employer moved to compel arbitration, the plaintiff objected.   Relying on *Brown,* he argued the employer's previous response to his arbitration request constituted a repudiation of the right to arbitrate.

The Ninth Circuit disagreed, and found no repudiation.   In doing so, it distinguished *Brown,* noting that the plaintiff in *Cox* never initiated formal arbitration proceedings.   According to the Ninth Circuit, to show that the defendant has repudiated the right to arbitrate, the plaintiff must have first initiated formal arbitration. " If he failed to do so, then [the employer] could not have repudiated the agreement."   *Cox*, 53 F.3d at 1121.   The defendant's pre-litigation response to the

plaintiff's letter  was thus not sufficient to constitute repudiation.  *Id.*

 *Garcia* involved an employer's alleged repudiation of a labor union collective bargaining agreement containing an arbitration procedure for the resolution of union members'  unfair labor practice claims.  Because labor-management disputes involving collective bargaining agreements are subject to specific rules, *Garcia* is not directly applicable to this case.  However, *Garcia* discussed general rules regarding the repudiation of arbitration agreements, and noted that, in determining if repudiation occurred, "the circumstances of the claimed repudiation are critically important." *Id.* at 721 (quotation omitted).

 Under Oklahoma law, a repudiation of a contractual obligation requires "a distinct, unequivocal, and absolute declaration of an intent not to perform." *Bourke v. Western Business Products, Inc.,* 120 P. 3d 876, 883 (Okla. Civ. App. 2005). The parties have not submitted Oklahoma decisions directly applying this rule to a claimed repudiation of an arbitration clause, and the Court has located none.  The Court is not bound by the decisions of the Ninth Circuit, but it finds persuasive the reasoning in *Brown* and *Cox* with regard to the circumstances required to support a repudiation of the right to arbitrate.  The Court finds that, because Plaintiff did not formally initiate arbitration, Defendants' expressed pre-litigation opinion that the arbitration clause was inapplicable was not sufficient to constitute a "distinct, unequivocal, and absolute declaration" that it would not participate in arbitration. *See Bourke, supra.*  Accordingly, the Court finds that Defendants did not repudiate their arbitration rights under the operating agreement.

 As Defendants acknowledge, however, courts have typically analyzed the argument raised by Plaintiff in the context of a waiver claim, and Plaintiff's contentions could be construed as claiming Defendants waived the right to arbitrate.   A party "may be deemed," on the basis of

equitable principles, to be prevented from asserting a right to arbitration.   *Hill v. Ricoh Americas Corp.*, 603 F.3d 766, 772 (10th Cir. 2010) (quotations omitted).   In *Hill*, the Circuit considered whether the defendant waived its right to pursue arbitration or was estopped from doing so because of its delay in seeking arbitration.   According to the Circuit "[t]here is no set rule as to what constitutes a waiver or abandonment of the arbitration agreement; the question depends upon the facts" of each case. *Id.* (quotation omitted).   However, several factors should be considered:

> (1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether the litigation machinery has been substantially invoked and the parties were well into preparation of a lawsuit before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place; and (6) whether the delay affected, misled, or prejudiced the opposing party.

*Hill,* 603 F.3d at 772-73 (citing *Peterson v. Shearson/American Express, Inc.*, 849 F.2d 464, 467-68 (10th Cir. 1988)).

In *Hill*, the plaintiff's employment had been terminated by the defendant, and he alleged a breach of his employment agreement.  Although the employment agreement contained an arbitration provision, the plaintiff did not pursue arbitration prior to filing suit.  Approximately five months after the lawsuit was filed, the defendant employer moved to compel arbitration, and the plaintiff objected.

Applying the relevant factors in *Hill,* the Circuit examined the defendant's conduct to determine if it had waived the right to arbitrate.   It noted that, prior to filing the motion to compel arbitration, the defendant answered the complaint, the parties participated in a scheduling conference and served their initial Rule 26(a)(1) disclosures, and the plaintiff submitted a request for document

production.  Approximately one week after receiving the document requests, Defendant moved to stay the case and compel arbitration. *Hill*, 603 F.3d at 772. Prior to the filing of that motion, neither party had referenced  the arbitration provision.

According to the Tenth Circuit, the defendant's delay in seeking arbitration, without more, did not constitute a waiver.  Although it emphasized that "[a]n important consideration in assessing waiver is whether the party now seeking arbitration is improperly manipulating the judicial process," *Id.* at 773, it found the defendant had not engaged in such manipulation.   Noting that little activity had occurred in the litigation prior to filing the motion to compel arbitration, the Circuit found the plaintiff was not prejudiced by the timing of the motion, and there had been no waste of judicial resources.  Additionally, the motion to compel arbitration was filed eleven months prior to the scheduled trial date, and the parties had not yet expended time and effort in discovery.[4]  Considering these circumstances, the Circuit concluded that "the district court should not have found waiver and should have ordered arbitration and stayed judicial proceedings."  *Hill*, 603 F.3d at 776.

In this case, Defendants did not delay in seeking arbitration, as their motion was asserted as an alternative to the motion to dismiss, and it was filed in response to the Complaint.  No scheduling conference has been conducted, and no deadlines have been set by the Court.

Based on the circumstances presented in this case, the Court finds that Defendants have not repudiated or waived their right to pursue arbitration under the terms of the operating agreement. Accordingly, the motion to compel arbitration is granted.  This action is hereby stayed and will be

---

[4]In contrast, the Circuit noted evidence of attempted manipulation warranting a finding of waiver has been found where a defendant sought dismissal on the merits of the claims and did not seek arbitration until after the court ruled on the merits.  *See, e.g., Hooper v. Advance America, Case Advance Centers of Missouri, Inc.*, 589 F.3d 917, 919 (8th Cir. 2009) (finding the defendant's conduct displayed a strategy to determine how the case was proceeding in federal court before resorting to arbitration).

administratively closed pending completion of the arbitration proceedings in accordance with the requirements of the operating agreement.

Conclusion:

For the foregoing reasons, the motion to dismiss for lack of subject matter jurisdiction is DENIED.  The motion to compel arbitration and stay this action is GRANTED, and this action is stayed and will be administratively closed pending the outcome of the arbitration proceedings.  The parties shall jointly notify the Court of the completion of the arbitration proceedings within 14 days thereof.  If a party seeks to reopen this action for any appropriate purpose, a motion to reopen must be filed no later than seven days after the filing of the notice to the Court.

As noted herein, Plaintiff did not object to Defendants' request that she file an amended complaint to clarify that the claims she asserts are brought on behalf of  the estate of Mr. Tormey as a creditor of Bridgewater.  Because this action is being stayed and administratively closed, Plaintiff need not do so at this time.

IT IS SO ORDERED this 9th day of April, 2013.

TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE